**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Jorge Adalberto Rodriguez Lopez,

Petitioner

v.

Todd Blanche, et al.,

Respondents

Case No.: 2:26-cv-01385-JAD-NJK

**Order Granting Habeas Petition and Directing Petitioner's Immediate Release**

[ECF No. 25]

Petitioner Jorge Adalberto Rodriguez Lopez is a Cuban citizen who was ordered removed from the United States in 2019. But when immigration officials could not effectuate his removal within 90 days, Lopez was released from custody into the United States on an order of supervision. Despite complying with that order of supervision, Immigration and Customs Enforcement (ICE) officials arrested Lopez on April 29, 2026, and he has been detained at the Nevada Southern Detention Center ever since. Lopez filed a pro se petition for a writ of habeas corpus seeking his release from custody in May 2026. I appointed counsel and, on June 17, 2026, Lopez filed a counseled amended petition contending that his detention is unlawful because (1) he has been held in excess of six months with no reasonable likelihood that he will be removed to Cuba in the reasonably foreseeable future, (2) his arrest was not justified by a violation of his order of supervision or changed circumstances making his removal more likely, and (3) the government's attempts to remove him to Mexico violate his due-process rights. I grant Lopez's petition on the first two grounds, and I order his release.

## Background

Lopez came to the United States in 2016 and received his green card through the Cuban Adjustment Act.[1] After he pled guilty to smuggling an individual across the Mexican border in 2018, he was ordered removed to Cuba on August 9, 2019.[2] Lopez was detained for approximately three months under his final removal order, but he was released on an order of supervision because ICE officials could not effectuate his removal to Cuba.[3] Lopez was arrested by ICE officials on April 29, 2026, because he was "suspected of being in the United States unlawfully."[4] That day, Lopez was given a notice indicating ICE's intention to remove him to Mexico.[5] Despite the court's order that Lopez not be transferred out of this district except to effectuate a lawful removal, ICE moved Lopez to different facilities in Arizona in an effort to quickly remove him to Mexico.[6] I concluded that the respondents had violated this court's order and ordered that Lopez be returned to custody in Nevada.[7]

## Discussion

### A. This court has habeas jurisdiction over Lopez's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[8] That writ permits a person who is in custody to challenge the legality of his

---

[1] ECF No. 25 at 2; ECF No. 31 at 3 (reflecting that Lopez was approved for lawful-permanent-resident status on August 18, 2018).

[2] ECF No. 25-1 (removal order).

[3] *See* ECF No. 25-2 (order of supervision).

[4] ECF No. 31 at 3.

[5] ECF No. 25-4.

[6] ECF No. 25 at 7–8.

[7] ECF No. 24.

[8] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[9]

**B. Lopez has shown that he is entitled to relief on his prolonged-detention claim.**

***1. The government has authority to detain noncitizens after they have been ordered removed.***

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed. It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[10] During that 90-day period, detention is mandatory.[11] The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible; removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy[;]"[12] or has been determined "to be a risk to the community

---

[9] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[10] 8 U.S.C. § 1231(a)(1)(B).

[11] 8 U.S.C. § 1231(a)(2)(A).

[12] *Zadvydas*, 533 U.S. at 682.

or unlikely to comply with the order of removal."[13] If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[14]

***2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.***

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[15] To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[16] It determined that six months of post-removal-period detention is presumptively reasonable.[17] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[18] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[19] And as "the period of prior post-

[13] 8 U.S.C. § 1231(a)(6).

[14] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[15] *Id.* at 690.

[16] *Id.* at 699.

[17] *Id.* at 701.

[18] *Id.*

[19] *Id.*

removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[20]

### ***3. Lopez has shown that he has been detained for more than six months and he has good reasons to believe that he will not be removed in the reasonably foreseeable future.***

Lopez has been detained under his final removal order for approximately eight months. He served about three months awaiting removal in 2019, plus he has been in custody following his April 2026 arrest for more than five months.[21] So Lopez bears the initial burden of showing that there are "good reason[s] to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[22] To meet that burden, Lopez notes that he has been subject to an order of removal for approximately seven years, and ICE has been unable to remove him throughout that period. He cites to other cases in this district acknowledging that Cuba generally does not "accept Cuban nationals under final orders of removal from the United Stats, particularly those with criminal convictions."[23] And he notes that ICE cannot successfully remove him to Mexico because Mexico will only accept noncitizens who agree to be sent there,

---

[20] *Id.* (cleaned up).

[21] Many courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*. *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals"). I am persuaded by this reasoning and include Lopez's prior detention in this calculus.

[22] *Zadvydas*, 533 U.S. at 701.

[23] ECF No. 25 at 19 (citing *Perez Canet v. Blanche*, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026)).

and Lopez does not consent.[24] I find that this information is sufficient to meet Lopez's burden to show good reasons to believe that he will not be removed within the reasonably foreseeable future.

The government has not met its shifted burden to provide evidence showing that his removal is likely. It concedes that it has abandoned its attempts to remove Lopez to Cuba and instead insists that he can and will be removed to Mexico. But it does not address Lopez's argument that Mexico will not accept unwilling deportees, and it does not produce any evidence showing that Mexico has indeed agreed to accept him. So I find that Lopez is unlikely to be removed in the reasonably foreseeable future, and I order his release.

**C. Lopez has shown that ICE arrested him without following its own re-detention regulations.**

Lopez also contends that ICE arrested him in a manner that violates its own regulations. To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations. 8 C.F.R. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]."[25] Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[26] If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal

---

[24] ECF No. 21 at 5; ECF No. 21-1.

[25] 8 C.F.R. § 241.4(l)(2)(iii).

[26] 8 C.F.R. § 241.13(i)(2).

interview promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[27]

Lopez was released on an order of supervision in October 2019. When he was arrested, he was not given any notice that his supervised release was being revoked, nor was he given an initial informal interview to respond to the reasons for the revocation. The government does not contest these facts.[28] "It is a well-known maxim that agencies must comply with their own regulations."[29] And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."[30] It's undisputed that the bulk of those regulations was not followed here. So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release. I thus grant Lopez's habeas petition on this independent ground, too, and I order his release on the conditions of his prior order of supervision.

---

[27] 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).

[28] *Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that unopposed habeas allegations "must be taken as true").

[29] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

[30] *See, e.g.*, *Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

**D. Lopez has shown that he may be subject to third-country-removal procedures that violate due process.**

***1. The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.***

Once it has been determined that a noncitizen will be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to. The first choice is a country "to which the [noncitizen] wants to be removed."[31] If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[32] If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[33] Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-country removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[34] And the Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured. Normally, a noncitizen raises CAT

---

[31] 8 U.S.C. § 1231(b)(2)(A).

[32] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[33] 8 U.S.C. § 1231(b)(2)(E)(vii).

[34] 8 U.S.C. § 1231(b)(3)(A).

protections at or directly following his initial removal proceedings. It appears that no immigration statute or regulation addresses how a noncitizen may raise a CAT challenge after ICE determines that removal to the country on his removal order is impracticable and instead chooses a third country to deport him to.

In early 2025, ICE tried to fill that statutory gap. It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the State Department, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[35] In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[36] ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[37]

After the notice of removal is served, the ICE officer "will not affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[38] If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be

---

[35] ECF No. 25-8.

[36] *Id.*

[37] *Id.*

[38] *Id.*

persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[39] If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT from removal to the third country.[40]

***2. ICE's third-country policy violates due process, so any attempt to remove Lopez to a third country must be preceded by notice and a meaningful opportunity to be heard.***

Lopez contends that ICE's third-country policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause. "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[41] The "fundamental features of due process" are notice and an opportunity to be heard.[42]

The Ninth Circuit has not expressly decided what process is due to noncitizens faced with third-country removal, but it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[43] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the

[39] *Id.*

[40] *Id.*

[41] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[42] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[43] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

constitutional right to due process."[44] And in the unpublished case *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[45]

District courts have extrapolated these holdings to conclude that adequate due process of a third-country removal requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) if the answer is yes, "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts," and (4) provide "adequate time to prepare and file a motion to reopen[.]"[46] Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[47] District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[48]

---

[44] *Id.*

[45] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (cleaned up).

[46] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. at 727.

[47] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country, citing *Andriasian*).

[48] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide due process to a noncitizen who may be removed to that country. Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation. And ICE's second scheme doesn't fare much better. Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country. Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless an ICE officer determines, through an unexplained process, that he would be likely to prove that any of those protections applies. So this process does not comport with the fundamental requirements of due process.

I also find that Lopez is likely to face a due-process violation from this policy. The government has already attempted to deport him to Mexico and intends to do so again, but there is no indication that it intends to provide any process beyond serving the notice of intent in April. I therefore grant Lopez's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Lopez with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Jorge Adalberto Rodriguez Lopez's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 25] is GRANTED**. Petitioner **Jorge Adalberto Rodriguez Lopez must be released from detention** under the

terms of the order of supervision that was in place before his arrest **within three days of this order.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Lopez's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Lopez's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Jorge Adalberto Rodriguez Lopez absent proof that his removal to a specific third country is reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Jorge Adalberto Rodriguez Lopez to a third country unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to **CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
October 6, 2026